FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 10, 2016

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIE VANNORTRICK, | No. 1:15-CV-03133-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | ECF Nos. 14, 17 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 17. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 17).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

4    claimant suffers from "any impairment or combination of impairments which

5    significantly limits [his or her] physical or mental ability to do basic work

6    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

7    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

8    however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

9    §§ 404.1520(c); 416.920(c).

10   At step three, the Commissioner compares the claimant's impairment to

11   severe impairments recognized by the Commissioner to be so severe as to preclude

12   a person from engaging in substantial gainful activity.  20 C.F.R. §§

13   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

14   severe than one of the enumerated impairments, the Commissioner must find the

15   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

16   If the severity of the claimant's impairment does not meet or exceed the

17   severity of the enumerated impairments, the Commissioner must pause to assess

18   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

19   defined generally as the claimant's ability to perform physical and mental work

20   activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on December 2, 2011. In both applications, Plaintiff alleged a disability onset date of October 1, 2009. Tr. 153-59, 165-70. The applications were denied initially, Tr. 75-81, and on reconsideration, Tr. 83-87. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on March 6, 2014. Tr. 28-45. On March 24, 2014, the ALJ denied Plaintiff's claim. Tr. 21.

As a threshold issue, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to her disability benefit claim through December 31, 2014. Tr. 15. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, October 1, 2009. Tr. 15. At step two, the ALJ found that Plaintiff has a severe impairment: degenerative disc disease. Tr. 15. At step three, the ALJ found that Plaintiff does

not have an impairment or combination of impairments that meets or medically

equals a listed impairment.  Tr. 16.  The ALJ then concluded that Plaintiff has the

RFC to perform a range of light work, with the following additional limitations:

> She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for about six hours and stand or walk for about six hours in an eight-hour workday.  She can never [crawl] or climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs.  She can frequently balance, stoop, kneel, crouch, crawl.  She has to avoid concentrated exposure to vibration and hazards such as machinery and unprotected heights.

Tr. 16.

At step four, the ALJ found that Plaintiff is able to perform her past relevant

work as a retail store clerk, cashier, and returns clerk.  Tr. 20.  On that basis, the

ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.

Tr. 21.

On June 4, 2015, the Appeals Council denied review, making the

Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C.

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability income benefits under Title II and supplement security income

benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises

the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly discredited Plaintiff's symptom claims; and

3. Whether the ALJ properly determined that Plaintiff is able to perform past relevant work.

ECF No. 14 at 6.

## DISCUSSION

## A.  Medical Opinion Evidence

First, Plaintiff faults the ALJ for discrediting the medical opinions of Craig Whittlesey, M.D.; Maria Ho, M.D.; and Erin See, ARNP.  ECF No. 14 at 8-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31) (9th Cir. 1995).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an

1   impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d

2   1226, 1232 (9th Cir. 1987).

3       *1. Dr. Whittlesey*

4       Dr. Whittlesey, a treating physician, opined in April 2013 that Plaintiff was

5   unable to work due to limitations caused by her back condition which he described

6   as "severe lumbar pain and sciatica."  Tr. 378-80.  Dr. Whittlesey opined this was

7   not permanent, but he did not specify how long such limitations might be expected

8   to last.  *Id.*

9       This Court finds that the ALJ properly assigned the April 2013 opinion of

10   Dr. Whittlesey "little weight."  Because Dr. Whittlesey's opinion was contradicted,

11   *see* Tr. 18-20 (noting that the opinion of Dr. Ignacio and other evidence

12   demonstrated Plaintiff's ability to perform light work), the ALJ need only to have

13   given specific and legitimate reasoning supported by substantial evidence to reject

14   it.  *Bayliss*, 427 F.3d at 1216.

15       First, the ALJ found Dr. Whittlesey's opinion was inconsistent with

16   Plaintiff's longitudinal treatment history.  Tr. 20.  An ALJ may discredit treating

17   physicians' opinions that are conclusory, brief, and unsupported by the record as a

18   whole, or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*,

19   359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted).

20

1    The ALJ observed that Plaintiff failed to seek any treatment for significant

2    periods.  Tr. 17.  Inadequately or unexplained failure to seek treatment is a factor

3    that the ALJ can consider in his credibility analysis.  *See Tommasetti v. Astrue*, 533

4    F.3d 1035, 1039, 1041 (9th Cir. 2008) (the ALJ properly inferred pain was not as

5    all-disabling as alleged in light of Plaintiff's failure to seek an aggressive treatment

6    program; medical opinions that a claimant is unable to work may be rejected if

7    inconsistent with the medical records.)).  For example, the ALJ found that Plaintiff

8    sought no treatment from onset in October 2009[1] until April 2011.  Tr. 17 (citing

9    Tr. 312).  The ALJ is partially correct.  Plaintiff sought treatment for back pain

10    once in an emergency room, on March 13, 2010 (Tr. 245-53), and attended one

11    follow up appointment with Dr. Whittlesey on April 1, 2010. Tr. 244.  At that time,

12    he opined that the pain "could very likely resolve" by "just using anti-

13    inflammatories and proper back hygiene."  Tr. 244.  This oversight does not appear

14    significant, however, because Plaintiff then did not seek treatment for a year.  In

15    April 2011, Plaintiff experienced lumbar spine tenderness and reduced range of

16    motion.  An MRI showed an L5-S1 central disc herniation without impingement,

---

18    [1] On October 13, 2009, Plaintiff reported that she threw a "15 lb. [bag] of potatoes

19    in [the] back of [a] truck, heard a pop, and hasn't been able to stand up straight

20    since."  Tr. 238.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

as well as some facet arthrosis; pain medication was prescribed.  Tr. 17 (citing Tr. 312, 314).  In May 2011, Plaintiff agreed to arrange a physical therapy appointment (citing Tr. 309), and in June 2011, she was advised to follow up six weeks later.  Tr. 17 (citing Tr. 306).

The ALJ found that although Plaintiff fractured her wrist in March 2012,[2] there is no indication that she received therapy or follow-up treatment for her back from June 2011 until she presented with intermittent worsening back pain in April 2012.  Tr. 17 (citing Tr. 320).  At this appointment, Plaintiff denied having any back pain at the time.  Gait, balance, and reflexes were intact.  Tr. 17 (citing Tr. 320, 323).  These unexplained gaps in treatment are inconsistent with Dr. Whittlesey's opinion that Plaintiff's back condition is disabling.

Next, the ALJ found that physical examination results and objective testing did not support Dr. Whittlesey's opinion.  An ALJ is not required to credit any medical opinion that is brief, conclusory, and inadequately supported by clinical findings.  *Bayliss*, 427 F.3d at 1216.  Imaging at an April 2012 consultative evaluation by Dr. Ho revealed only mild degenerative disc disease at the L5-S1

---

[2] Plaintiff reported that she fractured her wrist in March 2012 after a vacuum fell over and onto her hand.  Tr. 224, 257.  Dr. Ho noted that Plaintiff's left hand was in a cast at the time of her examination.  Tr. 269.

level, minimal cervical spinal spondylosis, and a small suprapatellar effusion on the right knee; the left knee was normal.  Tr. 17-18 (citing Tr. 269).  Upon examination, there was no evidence of paravertebral muscle spasms or tenderness of the lumbar spine to feather touch.  Tr. 17-18.  Waddell's signs were negative.  Tr. 18 (citing Tr. 268).  There was no evidence of joint deformities, crepitus, or effusion, with the exception of the left wrist, which resolved.  Plaintiff's strength was 5/5 in all extremities, except the right leg, which was 4+ to 5/5.  Sensation was intact.  Tr. 18 (citing Tr. 268-69).  Records indicate that Plaintiff was also "neurologically intact" in May 2012.  Tr. 18 (citing Tr. 316, 318) (Plaintiff fell while getting out of a pool, but was neurologically intact).

Similarly, the ALJ found that although an MRI in May 2013 showed the overall level of disc protrusion increased, in June 2013, Plaintiff retained normal strength in all extremities.  Tr. 18 (citing Tr. 364).  In July 2013, gait, station, and balance again were normal and Plaintiff remained neurologically intact.  Tr. 18 (citing Tr. 362).  In February 2014, neurologist Cheerag D. Upadhyaya, M.D., performed a work-up for complaints of chronic low back pain, right anterior thigh and left leg symptoms, and variable bilateral fingertip, lower extremity, and right toe numbness.  Tr. 18 (citing Tr. 386).  Dr. Upadhyaya opined that electrodiagnostic testing was incomplete but otherwise normal.  Tr. 18 (citing Tr. 387).  Plaintiff had minimal to moderate low back tenderness to palpitation upon

1    neurologic examination.  Gait and muscle tone/bulk were normal.  *Id.*  Although

2    Plaintiff described more right leg pain, the most recent MRI showed *left* greater

3    than right lateral recess stenosis.  *Id.*  (italics added).  Dr. Upadhyaya was unable to

4    explain the claimant's constellation of symptoms, and did not recommend surgery.[3]

5    *Id.*  The ALJ correctly relied on the objective evidence when she discounted Dr.

6    _____

7    [3] Plaintiff disagrees with the ALJ's conclusions and points to aspects of the record

8    that she contends support Dr. Whittlesey's opinion, including the conflicting

9    opinion as to whether surgery was warranted.  ECF No. 14 at 9-11 (citing *e.g.,* Tr.

10   353, 355 (Dr. Whittlesey's October 2013 records); Tr. 345, 348 (Dr. Whittlesey's

11   December 2013 records) (documenting reported back pain, decreased range of

12   motion and positive straight leg raises)); *see also* Tr. 365 (In June 2013, Dr.

13   Whittlesey notes Dr. Thomas recommended fusion surgery).  The ALJ, tasked with

14   weighing contradictory evidence, set out a detailed and thorough examination of

15   the record, stated her interpretation of the evidence, and made specific findings.

16   Tr. 17-20; *see Batson*, 359 F.3d at 1193 ("[T] he Commissioner's findings are

17   upheld if supported by inferences reasonably drawn from the record .... and if

18   evidence exists to support more than one rational interpretation, we must defer to

19   the Commissioner's decision.").  Here, the ALJ's interpretation of the medical

20   evidence is reasonable.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14

Whittlesey's opinion.

Third, the ALJ found that Plaintiff's activities were inconsistent with Dr. Whittlesey's assessed extreme limitations.  Tr. 20.  In April 2012, Plaintiff lived in a house with her family.  She cared for her 13-year-old son and a five-year-old daughter; cooked but no longer made homemade meals; went outside on a daily basis and could go out alone; drove; shopped; and handled her own money. Plaintiff socialized once or twice a week.  Tr. 19 (citing Tr. 200-04).  The ALJ observed Plaintiff's mother indicated that Plaintiff visited with her three or four times a month.  Tr. 19 (citing Tr. 192).  On a typical day, Plaintiff stated, she woke up, ate, watched television, did some chores, sat outside, and took her daughter for a walk.  Tr. 19 (citing Tr. 260).  She was able to do some outdoor watering and weeding, Tr. 19 (citing Tr. 265), enjoyed making candles, and socialized with friends who came to visit her.  Tr. 19 (citing Tr. 260).  She reportedly fell while getting out of a pool in May 2012, Tr. 19 (citing Tr. 316), and exacerbated her back pain when she tried to push a car in August/September 2013.  Tr. 19 (citing Tr. 358).  The record shows Plaintiff fell on ice getting out of her truck in January 2014.  Tr. 340.  The ALJ found that, although Plaintiff alleges she is unable to do much of anything and needs to lie down throughout the day, the evidence indicates that she is independent in her daily activities and gets around as necessary.  Tr. 19.

1  Because the ALJ may discount an opinion that is inconsistent with a claimant's

2  reported functioning, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-

3  02 (9th Cir. 1999), the ALJ provided another specific and legitimate reason for

4  affording Dr. Whittlesey's opinion limited weight.

5       Finally, the ALJ discounted Dr. Whittlesey's opinion because it was largely

6  based on Plaintiff's self-reported symptoms and pain complaints.  Tr. 20.  A

7  physician's opinion may be rejected if it is based on a claimant's subjective

8  complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149.  Here,

9  the ALJ observed Dr. Whittlesey's opinion was based at least in part on "the

10  claimant's self-report of pain, but, as noted she is not entirely credible."  Tr. 20

11  (referring to Tr. 378).

12       *2.  Dr. Ho*

13       Dr. Ho examined Plaintiff in April 2012 and opined that Plaintiff could sit

14  for six hours in an eight-hour day and be able to lift and carry 20 pounds

15  occasionally and 10 pounds frequently, which limitation the ALJ credited.  Tr. 17.

16  Dr. Ho further opined that Plaintiff could stand and walk for at least two, but no

17  more than six, hours out of eight.  Tr. 17-18 (citing Tr. 264-70).  The ALJ rejected

18  this additional limitation, in part, based on the opinion of reviewing doctor O.J.

19  Ignacio, M.D., who assessed an RFC for light work.  Tr. 19 (citing Tr. 67-70).  As

20  noted, the ALJ also relied on the later neurological workup completed in February

2014 by Dr. Upadhyaya, who, after reviewing recent imaging studies and examining Plaintiff was unable to find "any explanation for the claimant's constellation of symptoms." Tr. 18, 20 (citing Tr. 387). Because the opinion of a non-examining physician may constitute substantial evidence when it is consistent with other independent evidence in the record, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), in this case, the opinion of another examining doctor,[4] Dr. Upadhyaya, the ALJ's reason for discrediting a portion of Dr. Ho's contradicted opinion is specific, legitimate and supported by substantial evidence.

Next, the ALJ rejected Dr. Ho's assessed standing and walking limitation because it appeared to be based upon the claimant's self-reports of knee pain. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tommasetti,* 533 F.3d at 1041 (an ALJ may reject an opinion that is "largely based" on a claimant's non-credible self-reports); *Tonapetyan,* 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

---

[4] Because Dr. Upadhyaya developed a treatment plan, it appears that he may be a treating physician, although this is the only medical record documenting his care. Tr. 388. As a treating physician, his opinion is entitled to greater weight than Dr. Ho's, who was an examining physician. *Holohan*, 246 F.3d 1201-02.

1    Dr. Ho opined that Plaintiff was limited to standing and walking less than

2    six hours a day.  This appears to be based on claimant's right knee pain.  But, as

3    the ALJ observed, pain is not an impairment.  Tr. 19.  Dr. Ho noted "a constant

4    ache in her right knee" and "complaint" of right knee pain at 120 degrees.  Tr. 265,

5    268, 269-70 (standing/walking capacity is limited "due to limitations of the lumbar

6    spine with radiculopathy and right knee pain.").  Dr. Ho's objective findings,

7    including normal strength, do not appear to support the assessed limitation,

8    indicating Dr. Ho must have relied, at least in part, on Plaintiff's unreliable self-

9    report when she assessed the standing/walking limitation.  As discussed below, the

10   ALJ properly discredited Plaintiff's testimony.

11       *3.  Nurse See*

12       Next, Plaintiff faults the ALJ for discounting the October 2012 and January

13   2013 opinions of Ms. See.  In October 2012, Ms. See opined that Plaintiff would

14   need to lie down or elevate her feet during the day, and this could not be

15   accommodated by normal work breaks.  Plaintiff's prognosis was "fair," and she

16   was awaiting spinal injections.  Tr. 329-30.  In 2013, Ms. See opined that pain

17   would cause Plaintiff to miss four of more days of work a month.  She opined that

18   Plaintiff's work should be sedentary and limited to no more than twenty hours a

19   week.  Tr. 19 (citing Tr. 390-92).  The ALJ gave little weight to Ms. See's opinions

20   regarding these limitations.  Tr. 19.

1    Ms. See is a nurse practitioner and as such is considered an "other source."

2    20 C.F.R. § 416.913 (d).  Because Ms. See is an "other source" whose opinions

3    about the nature and severity of Plaintiff's impairments are not entitled to

4    controlling weight, the ALJ need only have provided "germane reasons" for

5    rejecting her opinions.  SSR 06-03p, 2006 WL 2329939 at *2; *Molina,* 674 F.3d at

6    1111.

7    The ALJ discredited Ms. See's opinions for substantially similar reasons as

8    applied to Dr. Whittlesey's opinions.  Tr. 20.  The ALJ found that Ms. See's

9    opinions were inconsistent with Plaintiff's longitudinal treatment history as

10    discussed above.  Tr. 20.  Second, the ALJ found that Ms. See's opinions were

11    inconsistent with Plaintiff's performance on physical examinations, as previously

12    discussed.  Tr. 20.  An ALJ is not required to credit any opinion that is brief,

13    conclusory, and inadequately supported by clinical findings.  *Bayliss*, 427 F.3d at

14    1216.

15    Third, the ALJ concluded that Ms. See's opinions were inconsistent with

16    Plaintiff's reported functioning.  Tr. 19-20 (citing Tr. 265-66) (Plaintiff reported

17    that she was able to drive a few miles, shopped, performed personal care, did some

18    housework and some outdoor watering and weeding, and her hobby is her

19    children); Tr. 358 (Plaintiff reported she was doing well lately with low back pain

20    until she tried to push a car recently)).  An ALJ may discount a medical opinion

that is inconsistent with a claimant's reported functioning, *Morgan,* 169 F.3d at 601-02.

Fourth, the ALJ found that Ms. See's opinions were also based in part on Plaintiff's self-report of pain, which had been discredited.  Tr. 19-20 (citing Tr. 265-66) (Plaintiff reported that she was able to drive a few miles, shopped, performed personal care, did some housework and some outdoor watering and weeding, and her hobby is her children); Tr. 358 (Plaintiff reported she was doing well lately with low back pain until she tried to push a car recently)).  An ALJ is not required to accept a medical opinion that is "largely based" on a claimant's non-credible self-reports, *Tommasetti,* 533 F.3d at 1041.

Finally, the ALJ noted that Ms. See's opinions were inconsistent with Dr. Upadhyaya's most recent analysis, which found no explanation for Plaintiff's symptoms.  Tr. 20 (citing Tr. 387 (in February 2014, Plaintiff's symptoms could not be explained based upon current imaging)).  An ALJ may properly reject the opinion of an "other source" if it is inconsistent with the testimony of an acceptable source.  *See Molina*, 674 F.3d at 1111-12.

The Court finds the ALJ provided germane reasons for affording Ms. See's opinions little weight.

**B. Adverse Credibility Finding**

The Plaintiff next faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 15-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, '[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester,* 81 F.3d at

834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided several specific, clear and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 17.

### 1. Lack of Objective Evidence

First, the ALJ found that Plaintiff's alleged physical impairments and their corresponding symptoms were not supported by the medical evidence. Tr. 17-18. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining

the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ relied on the fact that, although Plaintiff has a long history of low back pain, she worked despite her condition and the evidence does not reveal any significant change or deterioration in her condition at the alleged onset date of October 1, 2009.[5] Tr. 17 (citing Tr. 236, 241, 245-253). On October 13, 2009, Plaintiff alleged worsening pain. Tr. 17. She had decreased range of motion as well as positive straight leg raise testing on the right. However, she was neurologically intact with normal strength, sensation, and reflexes. Tr. 17 (citing Tr. 239).

The ALJ also relied on Plaintiff's lack of regular treatment from October 2009 until April 15, 2011. Tr. 17 (citing Tr. 312). An MRI showed an L5-S1 central disc herniation without impingement, as well as some facet arthrosis. Tr. 17 (citing Tr. 314). In May 2011, Plaintiff agreed to arrange a physical therapy

---

[5] In May 2009, for example, Plaintiff told treatment providers that she had a long history of back pain, Tr. 241, and in January 2014, reported that she had chronic back and leg pain for twenty years. Tr. 383. However, records reflect earnings from at least 2005 through 2009. Tr. 172; *see also* Tr. 184 (Plaintiff reported working full time from 1998 through June 2006).

appointment, Tr. 309, and in June 2011, she was advised to follow up six weeks later. Tr. 17 (citing Tr. 306). The ALJ pointed out that, although Plaintiff fractured her wrist in March 2012, there is no indication that she received therapy or follow-up treatment for her back until she presented with intermittent worsening back pain in April 2012. She denied having any back pain at the time. Gait, balance and reflexes were intact. Tr. 17 (citing Tr. 320, 323).[6] The minimal treatment history does not support Plaintiff's allegations of pain.

Because an ALJ may discount pain and symptom testimony based on lack of medical evidence, as long as it is not the sole basis for discounting a claimant's testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and were not supported by objective and physical exam findings.

*2. Inconsistencies in Plaintiff's Statements*

In discrediting Plaintiff's symptoms, the ALJ also cited several inconsistencies in Plaintiff's statements. Tr. 18. In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation.

---

[6] Similarly, as noted, Dr. Ho's exam in April 2012 revealed no evidence of paravertebral muscle spasms or tenderness of the lumbar spine to feather touch. Waddell's signs were negative. Sensation was intact, strength was 5/5 in all extremities, except the right leg, which was 4+ to 5. Tr. 18 (citing Tr. 268-69).

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1151, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Moreover, a strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals.  S.S.R. 96-7p.[7]

For example, the ALJ found that although Plaintiff testified she had severe mobility problems (she can stand no more than fifteen minutes, and sit no more than ten minutes[8]), she told a physical therapist in June 2012 that home exercises

---

[7] Social Security Ruling 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistencies of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

[8] Tr. 34-35.  Similarly, as part of her application for benefits Plaintiff alleged that she could not stand longer than five to ten minutes, sitting is limited, and she could not lift more than five pounds.  Tr. 200.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

relieved pain when she did them, but she had been unable to perform the exercises because she had been in and out of the hospital visiting family – an activity inconsistent with severe mobility problems.  Tr. 18 (citing Tr. 295-96).  Next, the ALJ found that Plaintiff inconsistently reported insomnia.  For example, Plaintiff alleged insomnia in connection with her application, Tr. 183, 201, and testified that she was lucky if she slept two or three hours a night.  Tr. 17-18 (citing Tr. 36).  However, records in August 2013 show Plaintiff reported that she went to bed at midnight, woke up at seven a.m., and did not nap during the day, even though two months earlier Plaintiff reported that she slept four hours a night.  Also, the ALJ noted that Plaintiff testified that she suffered various side effect from the use of medication, the evidence did not corroborate her claims, another inconsistency that diminished Plaintiff's credibility.  Tr. 18 (citing Tr. 334, 361).

The ALJ reasonably determined Plaintiff made inconsistent statements that undermined her veracity as a witness.

### 3.  Daily Activities

The ALJ found that the level of physical impairment Plaintiff alleged was inconsistent with multiple reports of her daily activities.  Tr. 17-19.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for

an adverse credibility finding "if a claimant is able to spend a substantial part of his

day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting."); *see also Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001) (Plaintiff's ability to care for young children without help

undermined claims of totally disabling pain).  Here, the ALJ found, for example,

that Plaintiff cared for her children, cooked, drove, shopped, handled money,

socialized once or twice a week, and visited her mother three or four times a

month.  Tr. 19 (citing Tr. 192, 201-04).  The record also shows that Plaintiff did

some outdoor watering and weeding, Tr. 265, enjoyed making candles, and took

her daughter on walks.  Tr. 19 (citing Tr. 260).  In May 2012, Plaintiff reported

that she fell while getting out of a pool (Tr. 316) and exacerbated her back pain

after she tried to push a car in August/September 2013.  Tr. 19 (citing Tr. 358).

　　　"While a claimant need not vegetate in a dark room in order to be eligible

for benefits, the ALJ may discredit a claimant's testimony when the claimant

reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment."  *Molina*, 674 F.3d at 112-13 (internal quotation marks

and citations omitted).  The ALJ noted that Plaintiff "alleges an inability to do

much of anything with need to lie down throughout the day, but the evidence

indicates that she is independent in her daily activities and gets around as

necessary." Tr. 19.  The ALJ concluded that Plaintiff's activities are "inconsistent

with her allegations of disabling functional limitations," in other words, Plaintiff's

activities are inconsistent with her allegation of completely debilitating pain.  Tr.

19.  The ALJ properly relied on daily activities that exceed alleged limitations

when she assessed Plaintiff's credibility.

### 4. Reason Employment Ended

Finally, the ALJ relied on the fact that Plaintiff stopped working for reasons

unrelated to her allegedly disabling impairment.  Tr. 19.  The ALJ found that

Plaintiff's last employment ended "at least in part because she was laid off due to

lack of work."  Tr. 19 (citing Tr. 183).

An ALJ may consider that a claimant stopped working for reasons unrelated

to the allegedly disabling condition in making a credibility determination.  *See*

*Tommasetti*, 533 F.3d at 1040 (the ALJ properly discounted Plaintiff's credibility

based, in part, on the fact that the claimant's reason for stopping work was not his

disability); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that

the claimant left his job because he was laid off, rather than because he was

injured, was a clear and convincing reason to find him not credible).

Plaintiff briefly contends, without citing any authority, that being laid off

and receiving unemployment benefits do not preclude disability.  ECF No. 14 at

17.  The record is clear that Plaintiff left her job because she was laid off "due to lack of hours," not because she was physically unable to perform the job.  Tr. 183.  The ALJ properly considered and reasonably concluded that Plaintiff's condition was not the reason that she stopped working when assessing her credibility.

In sum, the Court finds the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

**C. Step Four Analysis**

Finally, Plaintiff faults the ALJ for finding that she is able to perform her past relevant work.  She alleges that the ALJ failed to include all of her limitations in the assessed RFC, failed to identify the specific demands of Plaintiff's past relevant work, and, finally, failed to compare the demands of Plaintiff's past work with her specific functional limitations.  ECF No. 14 at 18-20.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  *Id.* § 416.920(f).

This Court finds that the ALJ properly performed the step four analysis.  An ALJ need not include limitations in the hypothetical that the ALJ has concluded are not supported by substantial evidence in the record.  *See Osenbrock v. Apfel*, 240

F.3d 1157, 1163-64 (9th Cir. 2001).  Plaintiff contends the step four hypothetical failed to include the limitations assessed by Dr. Whittlesey, Dr. Ho and Nurse See. As already discussed by the Court, the ALJ did not err in excluding these alleged limitations in formulating Plaintiff's RFC.  As such, the ALJ did not err in excluding them from the hypothetical.

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  SSR 82-62; *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (internal citations omitted).  This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work.  *Id.* (citations omitted).  The claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61.  This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work.  SSR 82-62.

Plaintiff seems to fault the ALJ for basing her decision only on whether she could perform her past relevant work "as generally performed," without making a finding about her past relevant work as actually performed.  The ALJ found that

Plaintiff could perform her past relevant work "as generally performed."  Tr. 20. Such a finding is sufficient to support the ALJ's step four analysis.  The regulations do not require explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.  *Pinto,* 249 F.3d at 845 (emphasis original).  The vocational expert merely has to find that a claimant can or cannot continue her past relevant work as defined by the applicable regulations.  *Id.*; *see also Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1968) ("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job.").  Here, the VE testified his opinion that a person with Plaintiff's RFC could perform three jobs that she had performed in the past, as that work is generally performed, was consistent with the Dictionary of Occupational Titles.  Tr. 42.

This testimony comports with the requirement that a VE's testimony should not leave any "unresolved potential inconsistencies in the evidence."  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007), citing SSR 00-4p at *4 (SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles*]." (emphasis original) (footnote omitted)).

Because an ALJ may rely on a vocational expert's testimony that a claimant is able to perform past work as generally performed, as the ALJ did here, the ALJ did not err when she found that Plaintiff is able to perform past relevant work as a retail clerk, cashier, and returns clerk.

Plaintiff alleges that the ALJ should have weighed the evidence differently, but the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Defendant's motion for summary judgment (ECF No. 17) is

    **GRANTED**.

2.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

the file.

DATED this 10th day of August, 2016.

*S/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE